AO 91 (Rev. 08/09)   Criminal Complaint

# UNITED STATES DISTRICT COURT

### for the

Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| DELMAR HEPBURN, JERMAINE JONES, | ) |
| JOSILEIDE NOGUEIRA ALMEIDA, DAVI COSTA | ) |
| | ) |

Case No.  21-8423-BER

_____
*Defendant(s)*

FILED BY_____**TM**____D.C.

**Oct 31, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 28, 2021_____ in the county of _____Palm Beach**_____ in the
___Southern___ District of _____Florida_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324(a)(1)(A)(i) & (2)(B)(ii) | Attempting to illegally bring aliens into the United States for commerical advantage and private financial gain (HEPBURN AND JONES) |
| 8 U.S.C. 1326(a) | Attempted illegal reentery into the United States after deportation or removal (HEPBURN and NOGUEIRA ALMEIDA) |
| 8 U.S.C. 1325 | Attempted illegal entry into the United States (COSTA AND JONES) |

This criminal complaint is based on these facts:

See Attached Affidavit

**Upon the high seas and out of the jurisdiction of any particular State or district, and elsewhere, with Palm Beach County, in the Southern District of Florida, being the district to which the defendants were first brought.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

HSI Special Agent Cynthia Samples
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date:  10/31/21

_____
*Judge's signature*

City and state:   _____West Palm Beach, FL_____

Bruce E. Reinhart, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Cynthia Samples, being duly sworn, herby depose and state the following:

1.    I am a Special Agent (S/A) with the Department of Homeland Security, Homeland Security Investigations (HSI) assigned to the office of the Assistant Special Agent in Charge, West Palm Beach, Florida, and have been so employed by HSI since 2009.   I have successfully completed the Criminal Investigator Training Program and Special Agent Training at the Federal Law Enforcement Training Center in Glynco, Georgia.   Among my responsibilities as a Special Agent, I am responsible for investigating crimes against the United States, as more fully described in Titles 8, 18, 19 and 21 of the United States Code.

2.    The facts set forth in this affidavit are based on my own personal knowledge, and information obtained from others, including other law enforcement officers.   Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a Criminal Complaint, I have not included every fact known to me concerning this investigation, but have set forth only those facts necessary to establish probable cause to believe that on or about October 28, 2021:

a.    **Delmar HEPBURN**, a citizen and national of the Bahamas, committed the crimes of attempting to illegally bring aliens into the United States for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. 1324(a)(1)(A)(i) and (2)(B)(ii), and attempted illegal reentry after deportation, in violation of 8 U.S.C. 1326(a).

b.    **Jermaine JONES**, a citizen and national of the Bahamas, committed the crimes of attempting to illegally bring aliens into the United States for the purpose of commercial advantage and private financial gain, in violation of 8 U.S.C. 1324(a)(1)(A)(i) and (2)(B)(ii), and attempted illegal entry into the United States, in violation of 8 U.S.C. 1325.

c.     **Josileide NOGUEIRA ALMEIDA**, a citizen and national of Brazil, committed the crime of attempted illegal reentry after deportation, in violation of 8 U.S.C. 1326(a).

d.     **Davi COSTA** a citizen and national of Brazil, committed the crime of attempted illegal entry into the United States, in violation of 8 U.S.C. 1325.

### Probable Cause

3.     On October 28, 2021, at approximately 10:00 am, CBP Air and Marine Operations (AMO) West Palm Beach notified HSI that a patrol aircraft observed a target of interest (TOI) approximately 12 NM West of Freeport, Bahamas.  The AMO patrol aircraft maintained covert surveillance of the TOI on a westerly course until the aircraft had to refuel.  After refueling, the patrol aircraft reacquired the TOI approximately 31 NM west of the Bahamas following the same course, never less than 260 degrees or greater than 280 degrees.  The AMO patrol aircraft continuously provided updated positions to AMO marine patrol assets, and informed the assets that the TOI was taking on a significant amount of water and appeared in severe distress.

4.     At approximately 1:32 pm, AMO marine patrol assets located the TOI 26 NM due east and centrally located between Boynton Beach and Lake Worth, Florida at position 26 34.480N, 079 33.877W, approximately 50NM WNW from Bimini, Bahamas.

5.     AMO marine patrol observed 14 people on the deck of the TOI, to include three (3) minor foreign nationals, one (1) of whom was ultimately found to be unaccompanied.  All fourteen (14) occupants were safely transferred to the AMO marine vessel, prior to the TOI sinking.  The fourteen (14) occupants were then further transferred to a USCG Cutter for biometrics processing.

6.     The biometrics results revealed that none of the fourteen (14) foreign nationals, to include three (3) Brazilians, nine (9) Haitians, and two (2) Bahamians, onboard had permission or prior authorization to enter the United States, and that one (1) Brazilian (Josileide NOGUEIRA

ALMEIDA) and one (1) Bahamian (Delmar HEPBURN) had previously been removed from the United States. Biometrics also revealed that one (1) Brazilian (Davi COSTA) had an outstanding criminal warrant for sexual assault in Danbury, Connecticut.

7.      Delmar HEPBURN is a citizen of the Bahamas and was previously deported from the United States. The most recent Order of Removal was executed on June 22, 2021, whereby HEPBURN was removed from the United States and returned to the Bahamas. Immigration records confirm that HEPBURN never sought nor received permission from the Secretary of the Department of Homeland Security to reapply for admission to the United States, as required by law.

8.      Josileide NOGUEIRA ALMEIDA is a citizen of Brazil and was previously ordered removed from the United States on July 11, 2007. The Order was entered in abstentia because NOGUEIRA ALMEIDA failed to appear for her immigration hearing. She later self-deported on February 25, 2013. Immigration records confirm that NOGUEIRA ALMEIDA never sought nor received permission from the Secretary of the Department of Homeland Security to reapply for admission to the United States, as required by law.

9.      Davi COSTA is a citizen of Brazil. He did not have permission to come to or enter the United States legally.

10.     Jermaine JONES is a citizen of the Bahamas. He did not have permission to come to or enter the United States legally.

11.     Following a DHS Regional Concurrence Team (RCT) call on October 30, 2021, HEPBURN, NOGUEIRA ALMEIDA, and COSTA were transferred ashore and interviewed by HSI. JONES was transferred ashore and interviewed by HSI on October 31, 2021.

12.     At approximately 7:53 pm on October 30, 2021, HSI Special Agents and U.S. Border Patrol interviewed Delmar HEPBURN at the U.S. Border Patrol Station located in Riviera Beach, Florida.  The interview was electronically recorded for audio and video.  HEPBURN was able to read, write and speak the English language with no communication barriers.  Prior to beginning the interview, HEPBURN was read his *Miranda* warnings via a pre-printed form, stopping after each line to ask if he understood what was read to him.  HEPBURN answered in the affirmative each time.  HEPBURN was asked if he understood his *Miranda* rights which he again answered in the affirmative.   HEPBURN waived his rights and elected to speak with the interviewing agents.  HEPBURN made the following statements:

a.      "Sniper," an unidentified male in the Bahamas, approached Delmar HEPBURN and asked HEPBURN to find a boat captain to drive the boat with the fourteen (14) illegal aliens to the United States.  HEPBURN identified JONES as the captain of this particular smuggling event.  HEPBURN recruited JONES to operate the vessel.

b.      Robert, a Brazilian organizer, gave HEPBURN instructions to put his (Robert's) people at Castaways Hotel in Freeport, Bahamas.  HEPBURN recalled putting six (6) passengers at the Castaways Hotel.  Robert paid for the hotel with Robert's credit card.

c.      According to HEPBURN, Davi COSTA paid for eleven (11) passengers to be placed at the $50 dollar per room hotel on Pioneer Way in Freeport, Bahamas.  HEPBURN also stated that COSTA paid in cash for 120 gallons of fuel for the boat.

d.      According to HEPBURN, the Haitians were only charged a "boat fee," and filled the seats.  Ashley, a large Haitian woman, had her son, Peter, bring the Haitians to the boat.  Peter finished paying the owner for the boat.  Peter paid several thousands of dollars.  Robert, the

Brazilian, who was in Brazil, told HEPBURN that HEPBURN had to be on the boat, or else Robert would not allow the Brazilian passengers to travel on the boat.

       e.    HEPBURN claimed that during the trip, JONES cracked the hull of the boat, and it began to take on water; the engines cut off completely. The passengers began taking turns bailing out the water and became frantic. It should be noted that according to Air Marine officers, the vessel was approximately 10 minutes from being completed submerged under water. HEPBURN stated he removed his white shirt and placed it on a pole, to appear as a flag. Soon after, they were put on USCG cutter.

       13.    Agents asked HEPBURN if he had received payment from Robert to assist in the smuggle venture. HEPBURN negated but admitted that he owed "Sniper" over $20,000 for breaking "Sniper's" boat during a previous smuggling venture, and he implied that this venture would decrease his debt to "Sniper". Agents showed HEPBURN a photo line-up of all passengers on board the current smuggling event, and HEPBURN pointed to and circled a photograph of JONES and identified JONES as the captain of this smuggling load. HEPBURN admitted that the main objective of this trip was to bring the three (3) Brazilians to Miami, Florida because the Brazilians had paid and "for Robert to start sending more Brazilians to the Bahamas ... because last time thirteen (13) Brazilians got 'stoled' in the Bahamas, and that was money that the boss lost." Agents inquired about the Haitian passengers, and HEPBURN repeated that the Haitians only filled up the seats and paid for the boat. HEPBURN acknowledged that the Haitian passengers were also being brought to Florida. HEPBURN indicated that the Haitians had a handler, and upon arrival, the handler would pick up the Haitians. Agents asked HEPBURN about his destination, and HEPBURN answered either Delray or Boynton Beach. Agents asked HEPBURN if he was aware of the proper way to enter the U.S., to which HEPBURN stated, "Of

course". Agents asked HEPBURN to describe the proper way to enter the U.S. HEPBURN responded, "Get your Visa, go to the airport, buy a ticket, jump on a flight, enter America." When asked where he would enter through, HEPBURN indicated through "Customs." HEPBURN stated he did not have a Visa to enter the U.S. because he had previously been deported, and he required special permission.

14.     HEPBURN acknowledged that this was a human smuggling venture, and it was illegal. HEPBURN initially denied getting behind the helm of the boat, refueling the boat, or holding a handheld GPS during this smuggling venture.

15.     Agents informed HEPBURN that an airplane was watching him, and he agreed that he saw the plane. Agents informed HEPBURN that the law enforcement airplane followed HEPBURN from the Bahamas until the boat broke down. HEPBURN then admitted that he (HEPBURN) was behind the helm of the vessel once they reached international waters, but not before. He claimed JONES and the two (2) Haitian males refueled the boat and threw the empty containers into the ocean.

16.     HEPBURN claimed that JONES was supposed to receive $1000 from each passenger.

17.     Agents asked HEPBURN about previous smuggling events, and he acknowledged that he came into Boynton Beach during an August 9, 2021 event. HEPBURN stated that he brought twelve (12) passengers during this smuggling venture. HEPBURN stated that Robert, the Brazilian, paid "Sniper" $22,000; however, "Sniper" only paid HEPBURN $5,000.

18.     HEPBURN acknowledged participating in another smuggling venture on or about August 26, 2021 in Ocean Ridge, Florida for which HEPBURN was paid $15,000. HEPBURN stated that he brought fourteen (14) or fifteen (15) passengers, including three (3) minors during

that smuggling venture.  HEPBURN further noted that when a helicopter approached them, HEPBURN beached the boat and got away.

19.   Agents asked HEPBURN about an April 26, 2021 smuggling event, and HEPBURN stated that he (HEPBURN) was "not smuggling" during that event, but was instead shuttling people from Bimini to Freeport where the migrants would be loaded onto "Sniper's" bigger boat and taken to the U.S.; however, HEPBURN's boat broke down and became adrift.

20.   Agents asked HEPBURN about a September 2020 event in Riviera Beach wherein HEPBURN was encountered with three (3) Haitian nationals.  HEPBURN stated that he (HEPBURN) was only the co-pilot and he did not receive his payment because he and the Haitians got caught.

21.   At approximately 6:27 pm, agents interviewed Josileide NOGUEIRA ALMEIDA at the U.S. Border Patrol Station in Riviera Beach, Florida.  The interview was electronically recorded for audio and video.  NOGUEIRA ALMEIDA was read her *Miranda* warnings by a U.S. Border Patrol Agent who speaks Portuguese.  The warning was read via a pre-printed form, stopping after each line to ask if she understood what was read to her.  NOGUEIRA ALMEIDA answered in the affirmative each time.  NOGUEIRA ALMEIDA was asked if she understood her *Miranda* rights.  NOGUEIRA ALMEIDA answered in the affirmative.  NOGUEIRA ALMEIDA waived her rights and elected to speak with the interviewing agents.  NOGUEIRA ALMEIDA made the following statements:

a.   She was on the vessel during this smuggle event.  The vessel departed from Freeport, Bahamas at approximately 7:00 am, and intended on coming to the United States.

b.      She identified HEPBURN as the boat captain.  She said that she paid HEPBURN $700 USD a day before they departed.  She further stated that HEPBURN threatened her, and she feared him.

c.      She was told the trip would take three (3) hours.

d.      All passenger mobile devices were taken away by HEPBURN and another person on the boat.  Once the boat began taking on water, the phones were given back so the passengers could call for help.

e.      HEPBURN placed his (white) shirt on a metal rod and used it as a flag.

f.      There were three (3) fuel drums on the boat, and HEPBURN stopped three (3) times to refuel.  The empty fuel drums were thrown into the ocean.

g.      The boat began to take on water and the pump could not get it out.

h.      When they were rescued and later placed on the USCG Cutter, HEPBURN went around to all passengers and ordered them to keep quiet.

i.      A photo line-up of all adult passengers was provided; she identified HEPBURN as the boat captain in the bottom far left position.

j.      A photo lineup of all adult passengers was provided; she identified the JONES as the captain's assistant in the bottom right position.

k.      She acknowledged that a Visa was required to enter the U.S. legally, and that coming to the U.S. on the boat was the wrong way.

l.      She claimed that she was bonded out from immigration custody on or about 2007; however, her attorney never advised her about a scheduled immigration hearing.

22.    Agents reinitiated contact with NOGUEIRA ALMEIDA at approximately 9:48 pm and reminded her of *Miranda*; NOGUEIRA ALMEIDA elected to speak with Agents again.

Agents asked NOGUEIRA ALMEIDA to describe her observation of the "assistant's" duties.

      a.     She indicated that the "assistant" refueled the boat and held the handheld GPS while providing the captain with directions.

      b.     The assistant sat next to the captain during the trip, over to his left.

      c.     She expressed how fearful she was while stranded out in the water and stated that the boat began taking on water quickly.

23.     At approximately 5:42 pm, agents interviewed Davi COSTA at the U.S. Border Patrol Station in Riviera Beach, Florida.  The interview was electronically recorded for audio and video.  COSTA, a citizen of Brazil, was able to read, write and speak the English language with no communication barriers.  Prior to beginning the interview, COSTA was read his *Miranda* warnings via a pre-printed form.  COSTA was asked if he understood his *Miranda* rights.  COSTA answered in the affirmative.  COSTA waived his rights and elected to speak with the interviewing agents.  COSTA made the following statements:

      a.     COSTA paid a total of $4500 to be brought to the U.S.  A subject identified as "Beto" was paid $3500, and HEPBURN was paid $1000 the day before via Western Union.

      b.     The passengers were driven to the boat, which was located approximately 30 minutes from the stash house.  Once they boarded the vessel, a Bahamian confronted HEPBURN and told him, "Why are you putting this many people on the boat?  It won't support it".  HEPBURN replied, "I don't care I want my money."

      c.     They departed Freeport, Bahamas on October 28, 2021, in the early morning, while it was still dark.

      d.     Agents provided COSTA with a photo line-up, and COSTA identified HEPBURN as the captain of the vessel.

24.     On October 31, 2021, at approximately 9:51 am, agents interviewed Jermaine JONES at the U.S. Border Patrol Station in Riviera Beach, Florida. The interview was electronically recorded for audio and video. JONES, a citizen of the Bahamas, was able to read, write and speak the English language with no communication barriers. Prior to beginning the interview, JONES was read his *Miranda* warnings via a pre-printed form. JONES was asked if he understood his *Miranda* rights. JONES answered in the affirmative. JONES invoked his right to counsel at this time. HSI terminated the interview at 10:05 am.

25.     Based on the foregoing facts, I submit that probable cause exists to believe that:

a.     Delmar HEPBURN committed the crimes of attempting to illegally bring aliens into the United States for the purpose of commercial advantage or private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i) and 2(B)(ii), and attempted illegal re-entry after deportation, in violation of Title 8, United States Code, Section 1326(a).

b.     Jermaine JONES committed the crime of attempting to illegally bring aliens into the United States for the purpose of commercial advantage or private financial gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i) and 2(B)(ii), and attempted illegal entry into the United States, in violation of Title 8, United States Code, Section 1325.

c.     Josileide NOGUEIRA ALMEIDA committed the crime of attempted illegal re-entry after deportation, in violation of Title 8, United States Code, Section 1326(a).

d.     Davi COSTA committed the crime of attempted illegal entry into the United

States, in violation of Title 8, United States Code, Section 1325.

**FURTHER AFFIANT SAYETH NAUGHT**

CYNTHIA SAMPLES, SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Sworn and attested to me by Applicant by Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d) and 4.1 this _31_ day of October 2021.

BRUCE REINHART
UNITED STATE MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. ___21-8423-BER___


UNITED STATES OF AMERICA

v.

DELMAR HEPBURN, et al.

_____ Defendants.                    /
_____


### CRIMINAL COVER SHEET

1.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?      ___ Yes  ✔ No

2.  Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?      ___ Yes  ✔ No

3.  Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?      ___ Yes  ✔ No


Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

BY:   *Rinku Tribuiani*
_____
Rinku Tribuiani
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.    0150990
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel:       (561) 820-8711
Fax:       (561) 820-8777
Email:    RTribuiani@usa.doj.gov